*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SPARKS, Minors.

UNPUBLISHED
July 28, 2022

No. 359435
Wayne Circuit Court
Family Division
LC No. 09-486603-NA

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her children—BS, JS, and AS[1]—under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist after 182 or more days since the issuance of an initial dispositional order, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time), (g) (failure to provide care and custody), and (j) (reasonable likelihood based on parent's conduct that child will be harmed if returned to home of the parent). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Children's Protective Services (CPS) specialist Michelle Hicks filed a petition for temporary wardship on behalf of petitioner, Department of Health and Human Services (DHHS), requesting that the trial court take jurisdiction over BS, JS, AS, and DW pursuant to MCL

---

[1] While the claim of appeal lists only AS, BS, and JS as minors at issue in this proceeding, two of respondent-mother's other children—KK and KTK—were also included in the trial court's order terminating parental rights. However, the claim of appeal respondent-mother filed with this Court only lists AS, BS, and JS, and notes that respondent-mother is appealing as to the termination of those children but not as to KK or KTK. Accordingly, respondent-mother's appeal is only challenging the termination of respondent-mother's parental rights as to AS, BS, and JS.

712A.2(b)(1) and (2), and make the children temporary court wards.[2] The petition alleged that respondent-mother did not have suitable housing in part because the home lacked water. At the time of the filing of the petition, respondent's home had been without water for four months. The petition also stated that respondent-mother contacted CPS and indicated that she was legally evicted from her home on October 30, 2019. In addition, the petition alleged that respondent-mother was not compliant with a court-ordered treatment plan relating to her mental health and also that she and her family had 17 prior contacts with CPS since 2006. The trial court later authorized the petition to remove all four children from respondent-mother and to place them in the care of DHHS, and found that a factual basis had been established for the court to exercise jurisdiction over BS, JS, AS, and DW under MCL 712A.2(b)(1) and (2).

Anita Pace, on behalf of DHHS, later filed a supplemental petition for permanent custody. DHHS requested that BS, JS, AS, KK, and KTK be made permanent court wards and committed to the Michigan Children's Institute pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j).[3] The petition noted that the court took jurisdiction over the children following admissions by respondent-mother and respondent-father, and the court ordered respondent-mother and respondent-father to follow a treatment plan. However, in violation of the treatment plan, respondent-mother failed to complete parenting classes, obtain suitable housing, maintain suitable income, visit consistently with her children, and benefit from her therapy.

Following a hearing on petitioner's supplemental petition for permanent custody seeking termination of respondent-mother's and respondent-father's parental rights, the trial court found statutory grounds by clear and convincing evidence for termination of respondent-mother's parental rights to BS, JS, AS, KK, and KTK under MCL 712A.19b(3)(c)(*i*), (g), and (j). The trial court explained the basis for this ruling, noting that respondent-mother failed to comply with her treatment plan. Further, the trial court found that respondent-mother was without appropriate housing, had no income, and had not maintained her mental health treatment. The trial court reasoned that the children could not be returned to her care at this time, and respondent-mother's lack of progress and length of time her children had been in the care of DHHS demonstrated that there was a reasonable likelihood that the children would be harmed if returned to her care. Further, the trial court found that there was no reasonable likelihood that respondent-mother would rectify the conditions that brought the children into DHHS care within a reasonable period of time.

The trial court also found by a preponderance of the evidence that the termination of parental rights to all the minor children was in each of the minor child's best interests. MCL 712A.19b(5). Specifically, the trial court found that the risk of harm from further neglect by

---

[2] DW was included in the petition for temporary wardship, but was not included in the order terminating parental rights because he was placed with his biological father, who filed for custody. Further, because KK and KTK were already in foster care at the time the petition for temporary wardship was filed, these children were not included in this petition. However, KK and KTK were included in the supplemental petition for permanent custody and order terminating parental rights.

[3] While these statutory grounds apply to respondent-mother, the statutory grounds applicable to respondent-father are MCL 712A.19b(3)(a)(*i*) and (*ii*), (c)(*i*) and (*ii*), (g), and (j). Respondent-father is not a party to this appeal.

respondent-mother outweighed the parent and child bond. The trial court highlighted the children's need for stability and permanency and considered the length of time the children had been placed in the care of DHHS, respondent-mother's failure to comply with the treatment plan and her lack of progress in completing the treatment plan, and respondent-mother's failure to obtain housing and maintain income. The trial court ordered that the children become permanent court wards and committed to DHHS for admission to the Michigan Children's Institute for adoption.

## II. ANALYSIS

Following our review of the record in this matter, we conclude that the trial court did not clearly err when it determined that petitioner presented clear and convincing evidence to support termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*) and (j). However, we also conclude that the trial court did err when it determined that petitioner presented clear and convincing evidence to support termination of respondent-mother's parental rights under MCL 712A.19b(3)(g).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710. This Court must give "due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).

## A. MCL 712A.19b(3)(c)(*i*)[4]

Respondent-mother argues that the trial court clearly erred in determining that petitioner presented clear and convincing evidence to support the termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*).

A trial court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if it finds by clear and convincing evidence that

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

---

[4] Although a finding of only one statutory ground is needed for a trial court to order termination of parental rights, *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011); *Keillor*, 325 Mich App at 85, in order to ensure completeness of the issue raised, we review each of the grounds relied on by the trial court.

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

"This statutory ground exists when the conditions that brought the children into foster care continue to exist despite the time to make changes and the opportunity to take advantage of a variety of services . . . ." *In re White*, 303 Mich App at 710 (quotation marks and citation omitted).

With regard to BS, JS, and AS, the trial court issued an order of disposition on February 20, 2020. This order noted that respondent-mother's custody of the children presented a substantial risk of harm to the children's life, physical health, or mental well-being. This order noted that the court required respondent-mother to successfully complete and benefit from the September 27, 2017 treatment plan, and also obtain and maintain mental health services, keep in contact with a caseworker and cooperate, attend all court hearings, and attend visits supervised by DHHS. This treatment plan required respondent-mother to obtain suitable housing, maintain suitable income, visit consistently with her children, and benefit from her therapy.

Given that over 18 months passed[5]—far more than 182 days—between February 20, 2020 and the August 23, 2021 termination hearing with regard to BS, JS, and AS, it is clear that the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). Specifically, at the time of the August 23, 2021 termination hearing, respondent-mother had failed to comply with her treatment plan and resolve the issues that led to her children's removal from her care. Respondent-mother had failed to maintain suitable housing for her children. At the August 23, 2021 termination hearing, Pace testified that respondent-mother was residing with an unspecified friend despite being provided with multiple housing leads each month. Respondent-mother was not employed at the time of this hearing, though she had previously been working for Door Dash until her driver's license was suspended. Respondent-mother did not receive any state assistance or income from the government. Further, Pace testified that respondent-mother cared about her children, but her efforts at reunification were "minimal."

Respondent-mother also failed to treat for her mental health issues. She frequently missed therapy sessions. As noted above, respondent-mother was also a "no show" to a psychological treatment session and did not start her therapy. Respondent-mother completed an intake session at the Development Center in April 2021, but did not return. Pace stated that respondent-mother was aware that mental health services and treatment were a part of her treatment plan, though she continued to miss appointments without cause.

The trial court did not clearly err in determining by clear and convincing evidence that the conditions that led to the adjudication—including unsuitable housing, lack of income, and failure to obtain mental health treatment—continued to exist at the time of the August 23, 2021 termination hearing. Further, the trial court did not err in determining by clear and convincing

---

[5] The Guardian Ad Litem, in its brief on appeal, points out that at the time of the termination hearing, DHHS had been involved with respondent's family for over a decade.

evidence that there was no reasonable likelihood that the conditions will be rectified within a reasonable time considering the children's ages and that respondent-mother has been involved with DHHS for years, resulting in multiple petitions to remove respondent-mother's children for similar issues, including respondent-mother's failure to maintain stable housing for her children.

## B. MCL 712A.19b(3)(g)

Respondent-mother next argues that the trial court clearly erred in determining that petitioner presented clear and convincing evidence to support the termination of respondent-mother's parental rights under MCL 712A.19b(3)(g).

A trial court may terminate parental rights under MCL 712A.19b(3)(g) if it finds by clear and convincing evidence that "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." The trial court found that respondent-mother "has no income." Further, respondent-mother was not employed at the time of the August 23, 2021 termination hearing because she was no longer able to work for Door Dash because of a suspended driver's license. Pace testified that respondent-mother did not receive any state assistance and refused to work because of COVID-19. Accordingly, there was no indication that respondent-mother was financially able to provide proper care or custody for her children. This is demonstrated by respondent-mother's continued difficulties with obtaining housing.

A determination that respondent-mother's failure to provide proper care or custody despite her ability to do so financially is an express requirement of MCL 712A.19b(3)(g). On this issue, the trial court did not explicitly find that respondent-mother failed to provide proper care or custody for her children despite an ability to do so financially. The evidence noted above indicates that respondent-mother was not financially able to do so, and because the trial court failed to find that respondent-mother was financially able to provide proper care and custody for her children, the trial court erred when it concluded that the termination of respondent-mother's parental rights was justified under MCL 712A.19b(3)(g) by clear and convincing evidence.

## C. MCL 712A.19b(3)(j)

Respondent-mother argues that the trial court clearly erred when it determined that petitioner presented clear and convincing evidence to support termination of respondent-mother's parental rights under MCL 712A.19b(3)(j).

A trial court may terminate parental rights under MCL 712A.19b(3)(j) if it finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Here, the trial court did not clearly err in determining that there was a reasonable likelihood, based on the conduct or capacity of respondent-mother, that BS, JS, and AS will be harmed if they were returned to respondent-mother's home. Hicks testified that the children were living in an unsuitable home environment, and respondent-mother did not have suitable housing at the time of the filing of the petition for temporary wardship. Further, at the time of the filing of the petition for temporary wardship, Hicks stated that respondent-mother's house had not had running water

for four months, and she was evicted on October 30, 2019. Despite being provided resources from multiple agencies, respondent-mother was not able to resolve her housing problems and was not able to obtain suitable housing at the time of the August 23, 2021 termination hearing. At trial, respondent-mother admitted to allegations that she had inadequate housing to care for her children and also that she had a prior mental health diagnosis. Accordingly, if returned to respondent-mother, the children would not have any housing. Further, respondent-mother was unemployed at the time of the termination hearing, did not receive state income assistance, and had no income. It is possible that the children may not receive proper care, such as medical care or food, because of respondent-mother's lack of income.

With regard to psychological treatment, respondent-mother did not follow through with her mental health services and treatment. Respondent-mother also had mental health issues, including bipolar disorder and depression. However, she continued to miss psychological treatment and therapy sessions without cause despite this treatment being a part of her treatment plan. The children would likely face harm if they were to be returned to respondent-mother, who, despite her acknowledgment of her health issues has shown virtually no initiative in treating them.

Pace stated that respondent-mother's efforts at reunification were "minimal." Pace further noted that respondent-mother's issues regarding her inability to secure housing and maintain her mental health had been pervasive and dated back to 2016. At the conclusion of the termination hearing, the court found that respondent-mother was without appropriate housing and had no income. Respondent-mother's lack of effort at reunification demonstrates that her ability to provide and care for her children is unlikely to change if the children are returned to her care. Given all of these factors, including respondent-mother's failure to financially provide for her family as well as her poor motivation in complying with her treatment plan over a significant period of time, the trial court did not clearly err in determining that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that [BS, JS, and AS] will be harmed if [they are] returned to the home of" respondent-mother. MCL 712A.19b(3)(j). Therefore, termination of respondent-mother's parental rights was appropriate based upon MCL 712A.19b(3)(c)(*i*) and (j).

Respondent-mother also challenges the trial court's finding that termination was in the best interests of BS, JS, and AS under MCL 712A.19b(5). "The trial court must order the parent's rights terminated if the [petitioner] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. This Court reviews "for clear error the trial court's determination regarding the children's best interests." *Id*. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (citation and quotation marks omitted).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks omitted). "The trial court may also consider a parent's history of domestic

violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

"[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012) (citation omitted). However, the trial court does not err if it fails to make explicit findings regarding best interests as to each child where the factual findings would be redundant. *In re White*, 303 Mich App at 716. "Although in most cases it will be in the best interests of each child to keep brothers and sisters together . . ., if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control." *In re Olive/Metts Minors*, 297 Mich App at 42 (quotation marks and citation omitted; ellipsis in original).

Here, it was uncontested that respondent-mother had a bond with her children. Respondent-mother's children were excited to see her during visits, and the visits were appropriate. However, despite these factors weighing against termination, the trial court did not clearly err when it determined that termination of respondent-mother's parental rights was in the best interests of BS, JS, and AS. The children were all placed in nonrelative care. Further, the foster homes have many advantages that are not available to the children at respondent-mother's home. Most notably, respondent-mother does not currently have suitable housing, she does not have income to provide for her children, and she has failed to address her mental health issues.

With regard to respondent-mother's visitation with her children, Pace testified that respondent-mother was somewhat inconsistent with visitation and preferred Zoom visits in Pace's opinion. Respondent-mother's inconsistent visits harmed the children's bonds with her. Respondent-mother's inconsistency with visitations harming her bond with her children is another factor weighing in favor of termination.

As noted above, respondent-mother has failed to comply with her case service plan, which ordered respondent-mother to obtain and maintain mental health services, keep in contact with a caseworker and cooperate, attend all court hearings, attend visitation with her children supervised by DHHS, maintain suitable income, and maintain suitable housing. Despite the time and assistance provided to her, respondent-mother's failure to remedy these issues indicates that she lacks the ability to parent and weighs in favor of termination.

Pace noted that respondent-mother's issues regarding her inability to secure housing and maintain her mental health had been pervasive and date back to 2016. In addition, Pace stated that respondent-mother's efforts at reunification were "minimal." Finally, it should be noted that the children have greater opportunities for permanency and stability if they are removed from respondent-mother's care. BS, JS, and AS were all doing well in their respective foster homes where they may obtain permanency and stability in their lives. Pace testified that she was requesting that respondent-mother's parental rights be terminated because the children need permanency and a stable environment. Pace believed it was in the children's best interest to maintain their stable environments through adoption where someone could provide for them. As a result of respondent-mother's difficulties in caring and providing for her children, as well as her failure to comply with her treatment plan and her involvement with DHHS for several years, the trial court did not err when it found by a preponderance of the evidence that termination of

respondent-mother's parental rights was in the best interests of BS, JS, and AS under MCL 712A.19b(5).

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello